COMMONWEALTH vs. ROBERT J. FULLER.

Berkshire. January 6, 1987. — April 21, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Rape. Indecent Assault and Battery. Evidence,* Spontaneous utterance, Jud-
icial discretion, Cross-examination, Relevancy and materiality. *Practice,
Criminal,* Instructions to jury. *Intent.*

At a trial of indictments for indecent assault and battery and rape of a child,
the judge correctly ruled that statements made by the three year old
victim in response to her mother's questions, out of the defendant's
presence but moments after an incident with the defendant and while
on the way to a doctor's office for an emergency examination, were
made in circumstances which reasonably negated premeditation and were
sufficiently proximate to the event to be spontaneous utterances admis-
sible under an exception to the hearsay rule. [681-683]
A criminal defendant, convicted of indecent assault and battery and rape
of a child, did not, on appeal, show that the trial judge abused his
discretion or prejudiced the defendant by prohibiting him from cross-
examining the victim's mother on an entirely collateral issue of sexual
abuse at a day care center the victim had attended. [683-685]
At a rape trial, the judge adequately instructed the jury on the issue of in-
tent. [685-686]

INDICTMENTS found and returned in the Superior Court De-
partment on November 7, 1984.

The cases were tried before *William W. Simons,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Maureen B. Brodoff,* Committee for Public Counsel Serv-
ices, for the defendant.

*Daniel A. Ford,* Assistant District Attorney, for the Com-
monwealth.

LIACOS, J. After trial by jury in the Superior Court in Berk-
shire County, the defendant was convicted of statutory rape,
G. L. c. 265, § 23 (1984 ed.), and indecent assault and battery

on a child under fourteen years of age, G. L. c. 265, § 13B (1984 ed.). He was sentenced to a term of two and one-half years in a house of correction on the indecent assault and battery conviction. On the rape conviction, he received a suspended sentence of from five to seven years at the Massachusetts Correctional Institution, Cedar Junction, with a probationary period of three years, to commence from and after the indecent assault and battery sentence.[1] He appealed, and the Appeals Court affirmed the judgments. *Commonwealth* v. *Fuller,* 22 Mass. App. Ct. 152 (1986). We allowed the defendant's application for further appellate review. We affirm.

The defendant claims that the judge erred in allowing the victim's mother to testify to her daughter's out-of-court statements; the judge ruled that the statements fell within the "spontaneous exclamation" exception to the hearsay rule. The defendant also claims that the judge erred in denying him adequate cross-examination of the victim's mother and in his instructions to the jury.

We summarize the evidence heard by the jury. On October 12, 1984, the mother left her home at approximately 1:30 P.M. to look for employment. She left her three year old daughter in the care of the seventeen year old defendant.[2] She returned home unexpectedly at 3:15 P.M. and found no one downstairs. Hearing noises upstairs, she started up the stairs and said, "Hey." Her daughter opened the bathroom door and ran out with her pants and underpants around her knees. The defendant, still in the bathroom, appeared to be zipping his pants. The mother asked "what was going on." The defendant said that he had gone in to use the bathroom, and the child had insisted on joining him, saying that she had to use the bathroom as well.

The mother examined the child's vagina. She saw nothing indicating abuse. Still concerned, she left her daughter with

---

[1] A single justice of the Appeals Court granted a stay of the execution of the defendant's sentences pending appeal.

[2] The mother had known the defendant, a neighbor, for approximately ten years. Between May and October, 1984, the defendant had babysat for the child thirteen or fourteen times.

the defendant and drove to a doctor's office.[3] Saying that she "knew for sure that something had happened," she requested an immediate appointment. When the mother returned home and told her daughter that she had a doctor's appointment, the child started to whimper about a "boo-boo" on her foot.

Over objection, the mother testified to the following conversation with her daughter while they drove to the doctor's office:

> THE MOTHER: "I asked her if [the defendant] had touched her."
>
> THE PROSECUTOR: "What did [she] say?"
>
> THE MOTHER: "She said yes. I asked her where. She said, 'My pee-pee.'"
>
> THE PROSECUTOR: "Did she say anything else?"
>
> THE MOTHER: "I asked her if he did anything else, and she said, Yes, 'I ate his pee-pee.'"[4]

According to the mother, the daughter referred to both a penis and a vagina as "pee-pee."

On October 13, 1984, Detective Bruce Eaton of the Pittsfield police department tape recorded an interview with the child in her home. He then arrested the defendant at approximately 11:55 that night. Advised of his Miranda rights twice, the defendant agreed to waive his rights and to speak with Detective Eaton. Prior to giving a statement to the police, the defendant was allowed to confer with his mother. He then gave a statement. He read the three-page transcription of his statement and signed it at 4:15 A.M. In this statement, which was admitted in evidence,[5] the defendant initially denied the allegations, then described the events of October 12 as follows.

---

[3] The mother testified that there was no telephone in their home at that time.

[4] The defendant's testimony at trial was partially corroborative of the mother's testimony, except he claimed that the child initiated the incident described above. See text, *infra*.

[5] The defendant does not challenge the denial of his motion to suppress this statement. The issue of the voluntariness and reliability of the defendant's confession was submitted to the jury pursuant to our "humane practice." See *Commonwealth* v. *Tavares,* 385 Mass. 140, 149-150, cert. denied, 457 U.S. 1137 (1982).

"Det. Eaton asked me if I had meant to touch [her] vagina. At first I told him that I did not but then told him that I did mean to touch [her] vagina." He further stated: "I did have [her] put her mouth on my penis . . . . This happened only for a second, [she] put her mouth around the outside of my penis like putting her finger in her mouth. . . . I . . . showed [her] my penis. I said to [her], 'Look [Martha].'[6] [She] came over and looked at my penis and opened her mouth and put the end of my penis on her lips of her mouth. This is when [her mother] came home and [the child] opened the door to the bathroom."

The defendant testified to a different version of the events of October 12, 1984. He said that he was using the bathroom at approximately 3:20 P.M. when the child ran in and jumped in the bathtub. She said that she had to "go to the bathroom." He pulled up his underwear and sat her on the toilet. When he picked her up, he put one hand under her arm and the other on her leg, "almost by her hip." Although his hand was near, or touching, her buttocks, he did not touch her genitalia. When the little girl finished going to the bathroom, the defendant told her "to come here so [he] could pull up her pants." He had pulled his pants down to finish urinating. She walked up to him and "touched [his] penis with her lips." He testified that he was "stunned" and "jumped back." At that point, the little girl "started laughing" and said, "Mommy watches these on movies." She then opened the door and ran out. Her mother was standing there; the defendant said that he had to finish urinating, and he shut the door.

1. *Hearsay statements of the victim.* The judge, over defense counsel's objection, permitted the mother to testify as to her daughter's responses to her questions regarding what had occurred on the afternoon of October 12, 1984.[7] He allowed the

---

[6] Not the child's real name.

[7] The child did not testify. The defendant makes no argument that he should have been given the right to examine the child before the jury. Nor does he argue that the child's hearsay statements should have been excluded because the child may have been incompetent as a witness. Accordingly, we do not consider these questions.

testimony on the theory that the answers were spontaneous utterances admissible as an exception to the hearsay rule. The defendant claims error in that the statements bore no indicia of spontaneity so as to bring them within the exception.

The judge ruled that the child's utterance "was made in such circumstances as would reasonably tend to negate any premeditation." He based his finding on (1) "the age of the child"; (2) "the manner in which she answered — didn't simply . . . — say yes or no or adopt the facts in the question"; (3) the close proximity to the events; and (4) "the added issue of going to the Doctor."

Under the spontaneous exclamation exception to the hearsay rule, "a statement is admissible if its utterance was spontaneous to a degree which reasonably negated premeditation or possible fabrication and if it tended to qualify, characterize and explain the underlying event." *Blake* v. *Springfield St. Ry.,* 6 Mass. App. Ct. 553, 556 (1978). *Commonwealth* v. *McLaughlin,* 364 Mass. 211, 222-223 (1973). *Commonwealth* v. *Hampton,* 351 Mass. 447, 449 (1966). The statements " 'need not be strictly contemporaneous with the exciting cause' . . . . Wigmore on Evidence (3d ed.) § 1750." *Rocco* v. *Boston-Leader, Inc.,* 340 Mass. 195, 197 (1960). In determining whether an utterance meets the tests of admissibility, the trial judge "ought to be given broad discretion. . . . [A]nd only in clear cases . . . of an improper exercise of discretion should his ruling be revised." *Commonwealth* v. *McLaughlin, supra* at 223, quoting *Rocco* v. *Boston-Leader, Inc., supra.*

The rule provides that each case must depend on its own circumstances. See *Commonwealth* v. *Hampton, supra.* In the instant case, the statements were made by a three year old child to her mother the first time she was away from the defendant after the incident occurred. Only a few moments had elapsed since she had come running out of the bathroom, the mother had examined her, and then driven to and from the doctor's office one block away. As the judge noted, the child's answers went beyond a simple "yes" or "no," or a mere acquiescence to ideas suggested by her mother. The fact that her statements were responses to her mother's questions does not

defeat their admissibility as spontaneous exclamations.[8] *Commonwealth* v. *Burden,* 15 Mass. App. Ct. 666, 676 (1983). See *Commonwealth* v. *Hampton, supra* at 450.

The defendant complains that there was no evidence that the child was "excited" or that she "exclaimed" the statements to her mother. In *Blake* v. *Springfield St. Ry., supra,* there was no indication that the declarant was excited or agitated at the time of her spontaneous declaration. See Note, A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases, 83 Colum. L. Rev. 1745, 1756 (1983). Accordingly, whether children manifest excitement or hysteria when they make a statement is not determinative whether the child is reliably reporting a traumatic event.[9] The issue is whether reasonable "indicia of reliability" support the statement's admissibility. In this case, the judge acted within his discretion in determining that the statements were made in circumstances which reasonably negated premeditation and were sufficiently proximate to the event so as to be admissible as spontaneous utterances.

*2. Cross-examination of the victim's mother.* The defendant claims that the judge erred by prohibiting cross-examination of the victim's mother concerning allegations of sexual abuse at a day care center which her daughter had attended. He now maintains that the mother's anxiety concerning such allegations was relevant to her credibility and to the likelihood that she exerted influence on her daughter.[10]

---

[8] "Even though the utterance is made in response to an inquiry, it may be admissible if the surrounding circumstances are such that they indicate that the exciting event still dominates the declarant's thought processes." *State* v. *Crowhurst,* 470 A.2d 1138, 1145 n.4 (R.I. 1984). See *United States* v. *Iron Shell,* 633 F.2d 77 (8th Cir. 1980), cert. denied, 450 U.S. 1001 (1981) (admitting a police officer's testimony as to a nine year old victim's responses to inquiries made between forty-five minutes and one hour and fifteen minutes after a sexual assault); *United States* v. *Nick,* 604 F.2d 1199, 1202 (9th Cir. 1979) (holding admissible statements, made in response to questioning by his mother, by a three year old who had been sexually assaulted by his babysitter).

[9] We note that the judge's ruling is consistent with Fed. R. Evid. 803(2) (1986) and the Proposed Mass. R. Evid. 803 (2).

[10] Although the defendant's brief maintains that the judge should have allowed the cross-examination as relevant to the mother's credibility, that

On direct examination, the mother testified that she had abandoned her plans to look for employment on the afternoon of October 12, 1984. When asked why, she replied, "I read the newspaper, and was concerned about E.C.D.C." [11] On cross-examination, the mother testified that her child had attended the Center for approximately one and one-half months until the end of June, 1984. Defense counsel asked why she had removed her daughter from the Center. The judge sustained the prosecutor's objection. During a bench conference, defense counsel stated that he sought to establish that the Center had terminated the child's enrollment because she "became very violent at times." He also wanted to bring out evidence that the child had complained about her "pee-pee hurting her" while she attended the Center. The judge ruled that the issue was "totally collateral . . . and not relevant."

A criminal defendant is, of course, guaranteed the right to reasonable cross-examination of the Commonwealth's witnesses. *Davis* v. *Alaska,* 415 U.S. 308, 316 (1974). *Commonwealth* v. *Dougan,* 377 Mass. 303, 310 (1979). It is equally well settled, however, that "the scope of cross-examination, including to what extent the accuracy, veracity, and credibility of a witness may be tested, rests largely in the sound discretion of the judge." *Commonwealth* v. *McDermott,* 393 Mass. 451, 455 (1984), quoting *Commonwealth* v. *Smith,* 329 Mass. 477, 479 (1952). Questions as to how far the cross-examination of a witness may be relevant to the issue on trial "are not open to revision unless the substantial rights of a party are clearly shown to have been prejudiced." *Commonwealth* v. *Nassar,*

was not the argument made to the judge at trial. Defense counsel focused on the "mother's state of mind in interpreting the events and taking the actions that she's taken," and the "reasonableness of the various persons' actions." The defendant did not argue that the mother's state of mind would be a basis of inferring that she fabricated the incident or her daughter's statements.

[11] The letters E.C.D.C. stand for Early Childhood Development Center (Center). After the child left, the Center became the focus of publicity regarding an employee's convictions for statutory rape, G. L. c. 265, § 23, and indecent assault and battery, G. L. c. 265, § 13B. See *Commonwealth* v. *Baran,* 21 Mass. App. Ct. 989 (1986).

351 Mass. 37, 44 (1966), quoting *Commonwealth* v. *Corcoran,* 252 Mass. 465, 486 (1925).

The burden of showing an abuse of discretion and resulting prejudice is on the defendant, and our determination must be made by considering the cross-examination in its entirety. *Commonwealth* v. *Hall,* 369 Mass. 715, 731 (1976). On the record before us there is no sign of prejudice. The defendant was allowed to establish that the mother was very upset when she returned home on October 12, 1984. The judge did not preclude questioning of the mother as to her state of mind or the degree of her agitation. What the judge excluded as collateral was inquiry regarding allegations of sexual abuse at the Center.

There was no abuse of discretion. See *Commonwealth* v. *McDermott, supra* at 455-456. Even if we assume that it was improper to prohibit cross-examination on this issue, the error would be harmless because the requested line of inquiry related to a subject collateral to the issue being tried, and the evidence of the defendant's guilt, including his own confession, was substantial. Consequently, any prejudice arising from error would not have affected the result. See *Commonwealth* v. *Mandeville,* 386 Mass. 393, 400 (1982).

3. *Jury instructions.* The defendant argues that the judge's instructions on intent were inadequate. At trial, the defendant acknowledged that the touching which formed the basis of the indictment for indecent assault and battery had occurred. He maintained, however, that it was accidental, unintended, and uninvited by him. We note that this argument is refuted by the defendant's signed statement, "I did have [her] put her mouth on my penis while we were in the bathroom."

In addition to his general instructions on intent, the judge instructed the jury as to intent and accident on the charge of indecent assault and battery. He did not specifically mention intent in his charge on rape. Defense counsel objected to the omission. During deliberation, the jury asked, "Do we have to prove beyond a reasonable doubt that he intended to insert his penis in her mouth or let her put her mouth on or around his penis?" The judge answered, "Yes. It's the Commonwealth's burden to prove beyond a reasonable doubt that the

defendant intended the act to occur." Defense counsel indicated that he was satisfied with the judge's answer. The defendant now complains, however, that the judge confused the jury when he reiterated the elements of statutory rape following the jury's question but failed to mention "the general intent to do the act constituting intercourse." "The judge in giving further instructions is not required to repeat all aspects of his prior charge," *Commonwealth* v. *Sellon*, 380 Mass. 220, 234 (1980), and "the adequacy of instructions must be determined in light of their over-all impact on the jury." *Id.* at 231-232. Viewing the charge as a whole, we find no error. "A defendant is 'not entitled to any particular instruction as long as the charge as a whole was adequate.'" *Commonwealth* v. *Comtois, ante* 668, 676 (1987), quoting *Commonwealth* v. *Sherry,* 386 Mass. 682, 696 (1982).

*Judgments affirmed.*