COMMONWEALTH *vs.* MICHAEL ANDREW OSACHUK.

No. 96-P-688.

Middlesex. April 10, 1997. - July 1, 1997.

Present: WARNER, C.J., SMITH, & LAURENCE, JJ.

*Homicide. Proximate Cause. Practice, Criminal,* Argument by prosecutor, Instructions to jury. *Evidence,* Scientific test.

At the trial of an indictment for involuntary manslaughter, the evidence established that the defendant provided the victim with every drug that contributed to her death and thus satisfied the Commonwealth's burden on the issue of proximate cause of death. [73-75]

At the trial of a criminal case, the prosecutor's questions to a prosecution witness were permissible attempts to clarify the witness's vague testimony and the prosecutor's subsequent reference to a "time line" properly summarized the witness's testimony. [75-76]

At the trial of an involuntary manslaughter indictment, the judge's instructions on the Commonwealth's failure to perform certain scientific tests were adequate and the judge was not required to instruct in the precise language requested by the defendant. [76-77]

INDICTMENT found and returned in the Superior Court Department on June 27, 1991.

The case was tried before *Regina L. Quinlan,* J.

*Wendy B. Golenbock* for the defendant.

*Sabita Singh,* Assistant District Attorney (*Thomas F. O'Reilly,* Assistant District Attorney, with her), for the Commonwealth.

WARNER, C.J. The defendant appeals from his conviction, by a Superior Court jury, of one count of involuntary manslaughter (G. L. c. 265, § 13). On appeal, he argues that his motion for a required finding of not guilty should have been allowed because of the insufficiency of evidence on the issue of proximate cause. He also claims that the prosecutor impermissibly goaded a key witness into creating an imaginary time line concerning the events of the day in question, and improperly relied on that time line in his closing argument.

Finally, he maintains that the judge gave an inadequate instruction on the permissible inferences the jury could draw from the government's failure to perform certain scientific tests on samples taken from the victim's body.

At the close of the Commonwealth's case, the jury could have found the following facts beyond a reasonable doubt. Around mid-day on April 25, 1991, the defendant and two friends, Matthew Dowd and Lisa Amrhein, went to the Lowell apartment of Patricia Jaffe. The defendant and Jaffe had met the previous day when he approached her on the street and asked if she knew where he could purchase heroin. On April 25, the defendant asked Jaffe if she would help him and his friends obtain more heroin. She agreed, and the four got into the defendant's car and drove to the Acre section of Lowell, where Jaffe purchased ten bags of heroin with the defendant's money.

The group returned to Jaffe's apartment. Earlier in the day, the defendant had given Amrhein "a couple" of methadone tablets. At her request, he subsequently loaned her $100 to buy cocaine. Amrhein and Dowd left the apartment to purchase cocaine, and the defendant and Jaffe consumed some heroin. When Amrhein and Dowd returned, Amrhein told the defendant she wanted to do a speed ball, a combination of heroin and cocaine. The defendant provided Amrhein with some heroin, and, as she began mixing the drugs, he commented that she was using too much cocaine, removing some of it from the mixture. Amrhein injected the speed ball into her arm and shortly thereafter, lost consciousness. The defendant told the others that he would "take care of it," and slapped Amrhein across the face while loudly calling her name. Amrhein was placed into a bath tub filled with cold water in an attempt to revive her. After several minutes passed with no improvement, the defendant suggested that "a shot of coke [might] snap her out of it." He subsequently left the bathroom, returned with a syringe filled with clear liquid, and injected it into Amrhein's arm. Dowd and the defendant then carried Amrhein back to the bedroom. Dowd remained with Amrhein while the defendant and Jaffe left the apartment to purchase more heroin. Later, the defendant left the apartment again, this time with Dowd, and was gone for several hours. Shortly after he returned the second time, the defendant and Dowd decided to take Amrhein, who was still

breathing, to the hospital. When the defendant, Dowd and Amrhein arrived at the hospital it was approximately 7:30 P.M., and Amrhein had been dead for "several hours."[1]

The defendant and Dowd were questioned at the hospital and later at the police station. The defendant gave several contradictory statements, all but one of which were ultimately suppressed. In the only statement deemed admissible, he told police he had been partying with Amrhein, that she had disappeared down an alley, and that he later found her lying in the alley gasping for breath and immediately drove her to the hospital, which was approximately five minutes away.

The autopsy revealed that Amrhein had a toxic level of cocaine in her system, and experts for both the Commonwealth and the defense agreed that the results of blood tests were consistent with death caused by cocaine, heroin and methadone intoxication.

1. *Sufficiency of the evidence on proximate cause.* The defendant argues that the evidence, including all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth, was insufficient to persuade a reasonable jury beyond a reasonable doubt, that the defendant's actions were the proximate cause of Amrhein's death. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). We disagree.

In order to be a proximate cause of death, a defendant's conduct need not be the only cause. Rather, conduct is a proximate cause of death if, "in the natural and continuous sequence," it produces the death, and the death would not have occurred in its absence. *Commonwealth* v. *Rhoades*, 379 Mass. 810, 825 (1980), quoting from California Jury Instructions, Criminal § 8.55 (4th rev. ed. 1979). When the conduct of two or more persons contributes concurrently to the death, the conduct of each is the proximate cause, regardless of the extent to which each contributes. *Commonwealth* v. *McLeod*, 394 Mass. 727, 745 n.21, cert. denied sub nom. *Aiello* v. *Massachusetts*, 474 U.S. 919 (1985).

The defendant urges us to consider only the act of injecting cocaine into Amrhein's arm in our evaluation of his claim, rather than his actions over the course of the entire afternoon. He argues that because the indictment charged him with kill-

---

[1] It is unclear exactly how much time elapsed between the time the defendant left Jaffe's house and the time he arrived at the hospital.

ing Amrhein by means of an assault and battery, and because the prosecutor referred specifically to the cocaine injection during his closing argument, the Commonwealth was required to prove that the injection alone was the proximate cause of death.

A general manslaughter indictment, such as the one returned in this case, is sufficient to "charge a defendant with involuntary manslaughter." *Commonwealth* v. *Clark,* 393 Mass. 361, 364 (1984), citing *Commonwealth* v. *Welansky,* 316 Mass. 383, 395 (1944). Absent a showing of prejudice, a defendant is not entitled to reversal of a conviction based on "a variance between the allegations of [the] indictment and the ultimate proof [at trial] if the essential elements of the crime are correctly stated." *Commonwealth* v. *Kope,* 30 Mass. App. Ct. 944, 945 (1991), citing G. L. c. 277, § 35. At trial, the defendant did not object to any of the testimony he now challenges on the ground that it was beyond the scope of the indictment. Furthermore, our review of the entire record "does not disclose that the defen[dant] was in any way misled or surprised by the prosecution's case," *Commonwealth* v. *Kope, supra,* but rather convinces us that he was afforded reasonable notice of the nature and grounds of the charge against him. Cf. *Commonwealth* v. *Daughtry,* 417 Mass. 136, 142 (1994).[2] Accordingly, we consider the evidence of the defendant's conduct over the entire course of April 25, 1991, in assessing the sufficiency of the evidence on the issue of proximate cause.

Viewed in the light most favorable to the Commonwealth, the evidence established that Amrhein's death was caused by a combination of cocaine, heroin and methadone intoxication, and that the defendant gave her methadone tablets, the money she used to purchase the cocaine, and heroin to use in a speed ball. It further showed that the defendant injected Amrhein

---

[2]Defense counsel aggressively cross-examined the Commonwealth's key witness regarding the defendant's actions on April 25, 1991, and during the charge conference, the prosecutor stated, "I'll be arguing, [in closing, that the defendant] provided [the victim] with methadone[,] bought the heroin[,] helped her mix the speed ball, [and] gave her the injection of cocaine, and [that] he left the house to take her to the hospital a good three hours before he arrived." In his own closing, defense counsel argued that a guilty verdict was unwarranted, in spite of the fact that the defendant "gave [the victim] some [methadone, cocaine and heroin, because he did not] force it down her throat."

with additional cocaine after she experienced an adverse reaction to the mixture. In short, the defendant provided Amrhein with every drug that contributed to her death on April 25, 1991. The Commonwealth's burden on the issue of proximate cause was therefore satisfied. See *Commonwealth* v. *Catalina*, 407 Mass. 779, 791 (1990) (person who furnishes drug to another, who voluntarily consumes it and dies as a result, may be liable for manslaughter because consumption of the drug was a foreseeable consequence of his actions). The fact that Amrhein voluntarily consumed all but the final dose of cocaine and may therefore have contributed to her own death does not relieve the defendant of liability. *Commonwealth* v. *McLeod*, 394 Mass. at 745 n.21.

2. *The prosecutor's conduct regarding the "time line" of events.* During her direct examination, Patricia Jaffe, the Commonwealth's key witness, had substantial difficulty estimating the times at which certain events occurred on April 25, 1991, as well as the time that elapsed between the occurrence of those events. The prosecutor attempted to clarify Jaffe's vague responses by suggesting alternative time frames.[3] The defendant argues that these questions were impermissibly designed to goad Jaffe into providing an inaccurate time line regarding the events of the day in question. He also claims that the prosecutor's reference in his closing, to the "time line" of events established as a result of the impermissible questions, was improper.

Our review of the record convinces us that the prosecutor's questions were permissible attempts to clarify Jaffe's vague testimony, and that his subsequent reference to a "time line" properly summarized her testimony. See *Commonwealth* v. *Kosilek*, 423 Mass. 449, 459 (1996) (prosecutor may comment on the evidence and draw reasonable inferences therefrom in closing). In any event, Jaffe testified that she never wore a

---

[3]An example of a typical exchange follows:

PROSECUTOR: "How long were Lisa and Matthew gone for when they went to purchase cocaine?"

JAFFE: "Not long."

PROSECUTOR: "Are we talking . . . longer than five or ten minutes?"

JAFFE: "I don't know, fifteen minutes."

watch and did not look at any clocks over the course of the day. Accordingly, the jury were aware that any references to the timing of events on April 25, 1991, were merely speculative. Furthermore, Jaffe was free to disagree with any inaccurate estimates made by the prosecutor. Finally, the exact time that elapsed between each of the defendant's actions on April 25, 1991, was not essential to the prosecution's case, and the judge's instructions as well as the prosecutor's own argument informed the jury that the closing arguments were not evidence.

3. *Instruction on the Commonwealth's failure to perform certain tests.* The defendant called Dr. Edward Sussman in an attempt to cast doubt on the prosecution's theory as to the cause of Amrhein's death. Sussman testified to certain inadequacies in the medical examiner's investigation, including the failure to perform certain scientific tests on samples taken from Amrhein's body. He suggested that had these tests been performed, they might have revealed the presence of other drugs, thereby providing the defendant with exculpatory evidence. During the charge conference, defense counsel requested an instruction, pursuant to *Commonwealth* v. *Bowden,* 379 Mass. 472, 485-486 (1980), regarding the possible inferences the jury could draw from the Commonwealth's failure to perform the tests.[4] The judge declined to give the instruction precisely as the defendant had requested, but told the jury:

> "There has been some evidence in this case relating to scientific tests or the results of scientific tests or the lack of such results. That is a factor which you may consider or you may disregard in assessing the credibility of any expert witness."

---

[4]The requested instruction was:

"Scientific Tests. In your deliberations in this case, you may consider the evidence that certain scientific tests were not conducted by the Commonwealth. You may give this whatever weight you feel it is entitled to or draw whatever inferences you feel are justified. It is for you to determine whether the inadequacies of the police investigation, if any, deprived the defendant of evidence which would be supportive of his position."

The defendant argues that the instruction was deficient in that it offered little guidance as to how much weight the jury should afford Sussman's testimony, or what inferences they should draw from the government's failure to conduct additional tests. We think the instruction was adequate.

The adequacy of a police investigation is a well-recognized ground on which to build a defense. *Commonwealth* v. *Bowden*, 379 Mass. at 485-486. Whether to give an instruction such as the one requested here, however, lies within the discretion of the trial judge. *Commonwealth* v. *Leitzsey*, 421 Mass. 694, 702 (1996). The instruction given by the judge informed the jury that they could take the Commonwealth's failure to conduct certain scientific tests into consideration in reaching their decision, albeit not in the exact language requested by the defendant. See *Commonwealth* v. *Roberts*, 378 Mass. 116, 129-130 (1979) (no requirement to give instruction exactly as requested). Furthermore, in addition to presenting the testimony of Dr. Sussman, defense counsel effectively cross-examined the Commonwealth's pathologist regarding his failure to request additional tests, and argued in closing that this omission precluded an accurate determination of the actual cause of Armhein's death. The adequacy of the autopsy performed on Amrhein's body was clearly before the jury. There was no abuse of discretion. See *Commonwealth* v. *Fuller*, 399 Mass. 678, 684-685 (1987) (in order to establish an abuse of discretion, the defendant must show that substantial rights were prejudiced).

*Judgment affirmed.*