## COMMONWEALTH vs. PETER J. CHONGARLIDES.

No. 03-P-949.

Nantucket. November 15, 2004. - December 22, 2004.

Present: DUFFLY, KANTROWITZ, & GREEN, JJ.

*Homicide. Controlled Substances. Dead Body. Practice, Criminal,* Jury and jurors, Challenge to jurors, Examination of jurors. *Proximate Cause.*

At a criminal trial, the judge did not abuse his discretion by empanelling a juror who knew the victim, where the judge appropriately questioned the juror as to the nature of her relationship with the victim and her ability to remain impartial. [710-712]

At the trial of indictments charging the defendant with manslaughter and distribution of heroin, the evidence was sufficient to establish that the heroin that the defendant supplied to the victim was the proximate cause of the victim's death, despite the presence of a potentially lethal amount of cocaine in the victim's blood, where the amount of heroin in her blood was also potentially lethal, and therefore, no leap of conjecture was required to prove causation. [712-713]

INDICTMENTS found and returned in the Superior Court Department on May 3, 1999.

The cases were tried before *Thomas E. Connolly,* J.

*Carlo A. Obligato,* Committee for Public Counsel Services, for the defendant.

*Julia K. Holler,* Assistant District Attorney, for the Commonwealth.

KANTROWITZ, J. The defendant provided heroin to Pamela Bouchard, who injected it and died as a result. He was charged with manslaughter, G. L. c. 265, § 13; distribution of heroin, G. L. c. 94C, § 32(*a*); and removal or conveyance of a human body, G. L. c. 272, § 71. A jury convicted him of all three charges. He appeals, claiming (1) the trial judge should have struck a prospective juror for cause because she knew the deceased; (2) the evidence was insufficient to sustain a finding

of causation because, while the defendant only provided heroin, either the heroin or cocaine in her system could have caused death; and (3) the jury instructions were flawed in that they did not properly inform the jury that the heroin had to be "the" efficient cause of death "without which" the death would not have occurred.[1] We affirm.

*Facts.* The facts are brief. On a January evening in Nantucket, the defendant met with, and supplied heroin to, the victim, Pamela Bouchard, and Thomas Dunham at the latter's home. Upon awakening from a drug-induced haze, Dunham saw the defendant on a bed and Bouchard on the floor, motionless. Thinking she had merely passed out, Dunham tried to revive Bouchard's lifeless body. Eventually, he realized she was dead. The defendant, who tried to help Dunham revive Bouchard, finally admitted to Dunham that "the greedy bitch kept wanting more, and she did eight bags and died." Instead of calling the police department, they stuffed her body under Dunham's bed. As they did, the defendant kicked her, exclaiming, "The dumb bitch died."

The following evening, after Dunham's mother fell asleep, Dunham and the defendant wrapped Bouchard's body in a blanket, loaded her into Dunham's brother's truck, and dumped her body into Nantucket Harbor. After they were done, the two returned to the crime scene and ingested more heroin. Bouchard's body was discovered floating in the harbor the next day.

The investigation quickly focused on the defendant and Dunham. Dunham confessed and, pursuant to a plea agreement, testified against the defendant.

*The juror.* The defendant challenges the judge's failure to exclude a juror for cause because that juror admitted knowing the victim casually; they both lived on Nantucket, and had gone to high school at the same time. During the voir dire, the judge called the juror to the bench and asked how well she knew the victim. The juror responded: "We were going to school about the same time as each other. I didn't know her well enough to

---

[1]For additional background, see *Commonwealth* v. *Chongarlides*, 52 Mass. App. Ct. 366 (2001), which involved review of certain lower court suppression issues.

have her over for dinner, but I knew who she was. . . . But, you know, to pass on the street and say hello — that type of 'know'; not close acquaintances." Twice the judge asked whether there was any reason in her mind to think that she could not be a fair and impartial juror, and twice she affirmed that she could be fair. The judge seated the juror over the defense's objection.[2]

The Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights guarantee a criminal defendant the right to an impartial jury. See *Commonwealth* v. *Seabrooks*, 433 Mass. 439, 442 (2001). General Laws c. 234, § 28, requires that a trial judge ask prospective jurors a series of questions to ascertain impartiality.[3] If an answer raises a concern, such as a relationship with a party, the judge must inquire further of that juror to ensure that she can be impartial. See *Commonwealth* v. *Young*, 401 Mass. 390, 396 (1987) (statute "requires a judge to examine a juror individually and outside the presence of the other members of the venire, if it appears to the judge that the juror may be affected by an extraneous issue"). A trial judge's subsequent determination that a juror is nonetheless impartial is subject only to review for an abuse of discretion. See *Commonwealth* v. *Amazeen*, 375 Mass. 73, 83 (1978).

Here, the juror indicated she "knew" the victim. The judge appropriately questioned her as to the nature of the relationship and her ability to remain impartial. In light of the juror's explanation that she knew the victim only by virtue of living in the same town and having attended the same high school, it was not error for the judge to rely on her representation that she

---

[2] The defense had already exhausted its six peremptory challenges, and counsel's request for an additional one was denied.

[3] The statute provides, in part, that "[u]pon motion of either party, the court shall . . . examine on oath a person who is called as a juror therein, to learn whether he is related to either party or has any interest in the case, or has expressed or formed an opinion, or is sensible of any bias or prejudice, therein." G. L. c. 234, § 28. "These subjects of inquiry are mandatory, and the trial judge has no discretion to deny a request that these questions be posed." *Commonwealth* v. *Sheline*, 391 Mass. 279, 290 (1984). "If the court finds that the juror does not stand indifferent in the case, another shall be called in his stead." G. L. c. 234, § 28.

could be impartial. "In determining whether a juror is biased, a judge may rely on the testimony of the juror." *Commonwealth* v. *Coleman*, 389 Mass. 667, 676 n.7 (1983). "[W]e will not conclude that the judge abused his discretion by empanelling [a] juror unless juror prejudice is manifest." *Seabrooks, supra* at 443. Prejudice was not manifest here, and the trial judge did not abuse his discretion by empanelling the juror.[4]

*Cause of death.* The defendant next argues that the evidence presented by the Commonwealth was insufficient to establish causation beyond a reasonable doubt. The foundation for his argument is the testimony of the medical examiner, Dr. James Weiner. Dr. Weiner testified that the victim's blood contained potentially lethal quantities of heroin and cocaine, and that either one could have caused Bouchard's death. The defendant argues that because Bouchard's death could have resulted solely from an overdose of cocaine, as opposed to heroin, the Commonwealth did not prove causation. We disagree.

The defendant erroneously relies on the well-known and oft-cited principle that "[w]hen the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof." *Commonwealth* v. *O'Brien*, 305 Mass. 393, 400 (1940), quoting from *Smith* v. *First Natl. Bank*, 99 Mass. 605, 612 (1868). As we explained in *Commonwealth* v. *Latney*, 44 Mass. App. Ct. 423, 426 (1998), however, "the concept pertains only to situations in which *any view* of the Commonwealth's evidence, however favorable, still requires a leap of conjecture with respect to essential elements of the crime charged in order to obtain a conviction" (emphasis supplied). Thus, the principle would be applicable if, for example, the evidence showed that either the defendant or another person (the two not acting in concert) was equally likely to have provided the lethal dose of heroin.[5]

---

[4]We, accordingly, reject the defendant's suggestion of a per se rule requiring exclusion for cause of any potential juror who knows the victim of a homicide. Such a determination is best left to the discretion of the trial judge, "who ha[s] the opportunity to observe the prospective juror, [and can then make] a determination that the juror is indifferent after exploring the grounds for a possible claim that the juror was not impartial." *Amazeen, supra* at 83.

[5]In *Latney*, we further explained the inapplicability of the stated principle in

Here, viewed in a light most favorable to the Commonwealth, the defendant gave Bouchard the heroin. The medical examiner testified that the heroin by itself was potentially lethal. Thus, no "leap of conjecture" was required to prove causation, notwithstanding the existence of other possible lethal causes. "In order to be a proximate cause of death, a defendant's conduct need not be the only cause." *Commonwealth* v. *Osachuk*, 43 Mass. App. Ct. 71, 73 (1997). See *Commonwealth* v. *Rhoades*, 379 Mass. 810, 825 (1980). See also *Commonwealth* v. *Maynard*, 436 Mass. 558, 563 (2002) ("It is well established that there may be more than one proximate cause of a victim's death"); *Commonwealth* v. *Kartell*, 58 Mass. App. Ct. 428, 431 (2003) ("If more than one cause exists, criminal responsibility for each cause is assessed separately").

The evidence, as presented, warranted verdicts of guilt.[6]

*Judgments affirmed.*

---

situations where "the evidence and inferences . . . [are] not as equally probative of innocence as of guilt." *Latney, supra* at 425.

[6]The third argument of the defendant is foreclosed by *Commonwealth* v. *St. Peter*, 48 Mass. App. Ct. 517, 524-525 (2000) (jury instruction that defendant's acts were "a," not "the," proximate cause of victim's death proper).