COMMONWEALTH *vs.* EUSEBIO RODRIGUEZ.

Essex. March 3, 1997. - July 10, 1997.

Present: WILKINS, C.J., LYNCH, FRIED, & MARSHALL, JJ.

*Evidence,* Admissions and confessions, Prior misconduct. *Practice, Criminal,* Admissions and confessions, Waiver, Voluntariness of confession, Instructions to jury, Capital case. *Constitutional Law,* Admissions and confessions, Waiver of constitutional rights.

In a murder case, the evidence presented at a hearing on the defendant's motion to suppress his statements to police warranted the judge's finding that the defendant, although in custody, was not interrogated until after the police had administered Miranda warnings. [364-366]

In a murder case, the evidence presented at a hearing on the defendant's motion to suppress his statements to police supported the judge's finding that the defendant knowingly and voluntarily waived his Miranda rights and the defendant failed to produce sufficient evidence that his mental condition required a finding that his waiver was involuntary. [366-367]

In a criminal case, relatively unimportant misstatements in the motion judge's findings of fact, not essential to his ultimate conclusion that the defendant's statements to police were voluntary, did not invalidate findings supported by subsidiary facts. [367-368]

At a murder trial, the judge's instructions to the jury more than adequately explained that the Commonwealth must prove beyond a reasonable doubt that the defendant's confession was voluntary. [368-369]

At the trial of a murder indictment, there was no error in admitting in evidence a statement of the victim made shortly before she was killed regarding the defendant's prior violent acts toward her, as that evidence was probative of the defendant's intent as well as the defendant's then state of mind. [369-371]

INDICTMENT found and returned in the Superior Court Department on April 1, 1992.

The case was tried before *John L. Murphy, Jr., J.*

*Stanley W. Norkunas* for the defendant.

*Robert J. Bender,* Assistant District Attorney (*D. Dunbar Livingston,* Assistant District Attorney, with him) for the Commonwealth.

LYNCH, J. The defendant appeals from his conviction of murder in the first degree on the theory of extreme atrocity or cruelty. He

contends that (1) he did not knowingly, intelligently, and voluntarily waive his Miranda rights; (2) the judge impermissibly relied on extraneous evidence in concluding that his confession was voluntary; (3) the judge improperly instructed the jury on the Commonwealth's burden to prove that the confession was voluntary; and (4) the judge improperly admitted prior bad acts evidence. He also asks that we exercise our power under G. L. c. 278, § 33E, and reduce the verdict to manslaughter. We affirm the conviction and decline to exercise our power under G. L. c. 278, § 33E.

We summarize the evidence in the light most favorable to the Commonwealth. *Commonwealth* v. *Cyr, ante* 89, 90 (1997). The defendant, who was born in the Dominican Republic, moved to the United States in the early 1980's, where he found employment as an automobile mechanic. In 1989, the defendant met the victim and, soon after, they started living together.

In early July, 1991, the defendant, the victim, and her son moved into the home of the victim's mother in Danvers. On the evening of July 20, 1991, at around 9:15 P.M., the victim returned to her mother's home where the defendant and her mother were watching television. Her son was sleeping on the couch. Although the victim and the defendant looked at each other, neither spoke. At this point, the victim turned to her mother and said, "Ma, I've had it. I can't keep living this kind of life he's putting me through. Did he tell you that he tried to choke me to death two days before we moved in with you and the baby was screaming because it hadn't been fed that night." The mother told the victim to go into the kitchen, prepare some food for her son, and that they would talk later.

After a few minutes, the defendant went into the kitchen with the victim's son. When he entered, the victim was peeling potatoes with a knife in her hand. They started to argue. The victim told the defendant that she had been to see her son's father, that she loved him, and that they were getting back together. The defendant stayed quiet for a moment and then said to go ahead and live with her son's father, indicating that he planned to return soon to the Dominican Republic. At this point, the defendant picked up the victim's son and started to leave the kitchen. The victim lunged at him with the knife, screaming, "I'll kill you, mother fucker." The defendant quickly placed the son on the counter and then struggled with the victim, taking the knife away

from her. In the struggle, the defendant and the victim fell to the floor. Using the knife, blade down, the defendant stabbed the victim nine times in the left arm, neck, and chest. The knife punctured vital organs, including her heart, left lung, and left kidney.

On hearing the victim's screams her mother ran into the kitchen and discovered the defendant straddling the victim. The defendant tried to hide the knife blade under the victim. There was no apparent bleeding, however the victim's eyes were "glossy" and her breathing was labored. The defendant ran from the house and drove away in his automobile. The mother called the police, and shortly thereafter the victim was taken. to Salem Hospital, where she was later pronounced dead.

The defendant drove to New York City, where he contacted a friend who loaned him money to purchase an airline ticket. The next morning he took a commercial flight to the Dominican Republic. On September 21, 1991, the defendant returned to the United States. He turned himself in to immigration officials in Miami, Florida. The defendant was incarcerated in the Dade County Jail and two days later he confessed to stabbing the victim.

1. *Voluntariness and waiver of Miranda rights.* The judge held an evidentiary hearing on the defendant's motion to suppress his confession and found the following facts. After learning that the defendant had been detained in Miami, the Massachusetts State police requested assistance from the local authorities. On September 23, 1991, Detective Victor Pidermann of the Metro-Dade County police department homicide bureau, a Spanish-speaking officer, visited the defendant at the Dade County Jail. The defendant agreed to go to the police station to make a statement. The detective drove the ten miles to the police station with the defendant in the passenger seat. During the drive they did not discuss the events which took place on July 20, 1991.

Shortly after they arrived at the police station, the detective read Miranda warnings to the defendant in Spanish. At 5:25 P.M., the defendant signed the Miranda card, placing his initials after each warning to indicate that he had understood the right. Subsequently, Detective Pidermann conducted a preinterview session with the defendant that served as the foundation for the formal interview. At 7 P.M., a stenographer was summoned to record the formal interview. Detective Pidermann opened the

interview by rereading Miranda warnings. Again, the defendant acknowledged that he understood the warnings. At that time, the defendant had been in custody for two days and had not ingested any drugs or alcohol.

At the conclusion of the hearing, the judge denied the defendant's motion.[1] The judge observed that the defendant "appeared neat and alert at the hearing and consulted with his attorney on a number of occasions. . . . [H]e understood what was said in English. While giving a statement to the Metro-Dade County police . . . [the defendant] was very cooperative and responsive. He maintained good eye contact with the detectives throughout the interview and did not appear tired." The judge found that "the Commonwealth has proved beyond a reasonable doubt that [the defendant] made a knowing, willing and intelligent waiver of his Miranda rights and thereafter made a voluntary statement to the Metro-Dade County police detectives on September 23rd, 1991."

The defendant contends that the judge erred in admitting his confession. Specifically, he argues that the police failed to advise him of his Miranda rights in a timely manner and therefore his waiver was invalid. In addition, the defendant argues that the judge's findings with regard to the suppression motion impermissibly relied on trial testimony. We shall address each argument in turn.

a. *Standard of review.* "In reviewing a judge's determination regarding a knowing waiver of Miranda rights and voluntariness, we 'grant substantial deference to the judge's ultimate conclusions and we will not reject a judge's subsidiary findings if they are warranted by the evidence.' " *Commonwealth* v. *Mandile*, 397 Mass. 410, 412 (1986), quoting *Commonwealth* v. *Benoit*, 389 Mass. 411, 419 (1983). However, we conduct an independent review to ascertain whether the judge properly applied the law. See *Commonwealth* v. *Magee*, 423 Mass. 381, 384 (1996); *Commonwealth* v. *Mello*, 420 Mass. 375, 381 n.8 (1995).

b. *Timeliness of Miranda warnings.* The defendant argues that the confession should be excluded because Miranda warnings

---

[1]The defendant also moved to suppress statements made to the Massachusetts State police. At the suppression hearing the judge noted that no evidence was offered to support the claim that the statement made to the Massachusetts State police was invalid. The motion was denied and the denial is not challenged on appeal.

were not given for almost two and one-half hours after the detective contacted the defendant. We disagree.

Miranda warnings must only be given before custodial interrogation. *Commonwealth* v. *Magee, supra* at 385. See *Miranda* v. *Arizona*, 384 U.S. 436, 444 (1966). "The procedural requirements of *Miranda* are required not where a suspect is merely in police custody, but rather where a suspect is subject to custodial interrogation." *Commonwealth* v. *Torres*, 424 Mass. 792, 796 (1997). "Interrogation 'must reflect a measure of compulsion above and beyond that inherent in custody itself,' and therefore Miranda warnings are only required when 'a person in custody is subjected to either express questioning or its functional equivalent.' . . . The term 'functional equivalent' includes 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 796-797, quoting *Rhode Island* v. *Innis*, 446 U.S. 291, 300-301 (1980). In this case the evidence warrants the judge's finding that the defendant was not interrogated until after the detective delivered Miranda warnings. Thus, we conclude there was no Miranda violation.

According to the detective's testimony, he contacted the defendant at approximately 2:50 P.M. on September 23, 1991. He met the defendant at the prison chapel, where the defendant had just completed a fugitive bond hearing via closed circuit television hookup with the local court.[2] The defendant agreed to accompany him to the police station to make a statement; however they had to wait for a second officer to escort them to the station. During the ten-mile drive to the police station, they had a general conversation about the extradition process, but the judge found, "Neither discussed the killing during the drive." They arrived at the police station at approximately 5 P.M. and the Miranda warnings card was signed by the defendant at 5:25 P.M. There was no evidence of conduct tantamount to interrogation

---

[2]For the first time on appeal the defendant suggests that he had an attorney during the fugitive bond hearing; thus his right to counsel under the Sixth Amendment to the United States Constitution had attached prior to the confession. However, the defendant presented no evidence at the suppression hearing that counsel had been appointed; he simply presumes that counsel was present at the fugitive bond hearing. There is no evidence in the record that suggests that the right to counsel had attached.

prior to the reading of Miranda warnings. There is no basis to disturb the judge's finding that Miranda warnings were given in a timely fashion.

c. *Voluntariness of waiver.* The Commonwealth bears the burden of proving beyond a reasonable doubt that the Miranda waiver was valid. *Commonwealth* v. *Magee, supra* at 386. "To be valid the waiver must be made voluntarily, knowingly, and intelligently." *Id.,* quoting *Commonwealth* v. *Edwards,* 420 Mass. 666, 670 (1995). "In determining whether a waiver was made voluntarily, the court must examine the totality of the circumstances surrounding the making of the waiver." *Id.,* quoting *Commonwealth* v. *Edwards, supra.* The relevant factors include, but are not limited to, "promises or other inducements, conduct of the defendant, the defendant's age, education, intelligence and emotional stability, experience with and in the criminal justice system, physical and mental condition, the initiator of the discussion of a deal or leniency (whether the defendant or the police), and the details of the interrogation, including the recitation of Miranda warnings." *Commonwealth* v. *Mandile, supra* at 413. See *Commonwealth* v. *Edwards, supra.*

The circumstances surrounding the giving of the statement support the judge's finding that the waiver was valid. The defendant agreed to accompany the detective to the police station to tell his story. When they arrived, the detective read Miranda warnings in Spanish and the defendant acknowledged that he understood that he was waiving his rights. He neither invoked his right to remain silent nor requested an attorney. The defendant was informed that he was under arrest for homicide in connection with the victim. The police did not offer any deals or leniency in exchange for the confession. Finally, the questioning only lasted a little more than two hours.

The defendant failed to produce sufficient evidence that his mental condition required a finding that his waiver was involuntary. See *Commonwealth* v. *Vazquez,* 387 Mass. 96, 100 (1982) (no per se rule against admitting statements of individuals with mental disorders). While Dr. David Swenson, a court psychiatrist, testified that the defendant had suffered from depression in October, 1991, he was unable to determine whether he suffered from this condition when he gave the confession.[3] Even if the

---

[3]"Courts do exclude statements by individuals suffering from mental illness if the disease rendered the individual incapable of understanding the meaning

psychiatrist had been able to determine that the defendant was depressed at the time of the confession, this would not require a finding that the waiver was involuntary because the defendant had no prior history of psychiatric treatment; he was very cooperative and responsive; he maintained good eye contact throughout the interview; and the answers to the detective's questions were lucid, demonstrating a rational thought process. See *Commonwealth* v. *Hartford, post* 378, 380-381 (1997) (defendant's limited reasoning ability did not warrant finding that he was incapable of making knowing waiver of Miranda); *Commonwealth* v. *Libran*, 405 Mass. 634, 638-639 (1989) (fact that defendant was suffering from mental retardation and mental impairment did not render his waiver involuntary); *Commonwealth* v. *Medeiros*, 395 Mass. 336, 347 (1985) (defendant's diminished mental capacity did not prevent him from effectively waiving his Miranda rights); *Commonwealth* v. *Cameron*, 385 Mass. 660, 664-666 (1982) (mentally deficient adult had capacity to make knowing and voluntary waiver of Miranda rights). Thus, we conclude that the judge did not err in finding that the defendant had voluntarily waived his Miranda rights.

2. *Extraneous evidence and voluntariness of confession.* The defendant's motion to suppress the confession was denied at the conclusion of the hearing. However, the judge did not issue a written memorandum and order until after the trial. In the written memorandum and order, the judge included the following:

> "[The defendant] appeared neat and alert at the hearing and consulted with his attorney on a number of occasions. He did not testify at the hearing. Although the defendant used his translator a good part of the time, Dr. Kelly examined the defendant in the English language and had no difficulty understanding him. Dr. Kelly felt that the defendant understood the . . . warnings [pursuant to *Commonwealth* v. *Lamb*, 365 Mass. 265 (1974)] and he related them to the defendant."

The defendant correctly points out in his brief that it was Dr. Swenson, rather than Dr. Martin Kelly, who testified at the suppression hearing. He also notes that certain details of his

and effect of a confession or caused the individual to be indifferent to self-protection." *Commonwealth* v. *Vazquez*, 387 Mass. 96, 100 & n.8 (1982).

background came from Dr. Kelly's trial testimony rather than testimony at the suppression hearing. The defendant argues that the judge's findings with regard to voluntariness are erroneous because he impermissibly relied on trial evidence. We disagree.

Due process requires a separate inquiry into the voluntariness of the defendant's statements apart from the Miranda waiver. *Commonwealth* v. *Magee, supra* at 387. A confession may only be admitted after a preliminary hearing in the absence of the jury and a determination of its voluntariness. *Commonwealth* v. *Vazquez, supra* at 102, 103. See P.J. Liacos, Massachusetts Evidence § 9.1, at 534 (6th ed. 1994). The judge may not rely on evidence that is not properly before him. See *Commonwealth* v. *O'Brien*, 423 Mass. 841, 848-849 (1996), and cases cited. However, misstatements in the judge's findings of fact not essential to his ultimate conclusions will not invalidate findings which are supported by subsidiary facts. See *Commonwealth* v. *Lawrence*, 404 Mass. 378, 386 (1989); *Commonwealth* v. *Villella*, 39 Mass. App. Ct. 426, 428 (1995).

Apart from these relatively unimportant misstatements the judge's findings amply support his conclusions and indicate no confusion between the suppression hearing and the trial evidence. Dr. Swenson, who testified at the suppression hearing, said that the defendant understood the warning he gave pursuant to *Commonwealth* v. *Lamb, supra*, prior to their interview in October, 1991. The defendant does not argue that language problems were a ground for suppression. In fact, Detective Pidermann interviewed the defendant in Spanish and the confession was taken with the assistance of a translator. The defendant testified at the trial in both English and Spanish. It is quite likely that the judge simply misstated the expert witness's name and whether an interpreter was used during the examination because every other fact in the written memorandum was supported by evidence submitted during the suppression hearing. Even if this is not the case, this evidence has little, if any, significance in view of the bulk of the findings, essentially unrebutted, that the defendant's statements were voluntary.

3. *Voluntariness instruction.* Pursuant to our "humane practice" rule, the judge instructed the jury to consider the voluntariness of the confession.[4] The judge instructed:

---

[4]Where there is a live issue with regard to the voluntariness of a defendant's

"There were statements presented to you for your consideration, some in writing and statements made by [the victim's mother]. Before you may consider any of those statements, you are going to have to make a preliminary determination whether [they] can be considered as evidence in this trial or not. You may consider such statements in your deliberations from all of the evidence in the case, but the Commonwealth has to prove beyond a reasonable doubt that the defendant made the statement that he is alleged to have made and that he or she made the statement voluntarily *or* he made the statement voluntarily, freely and rationally" (emphasis added).

The defendant argues that the third sentence should have read, "You may *not* consider such statements . . ." and the word "or" in the last sentence combined to reduce the Commonwealth's burden. The defense argues that the judge's instruction improperly shifted the burden to the defendant to prove the statements were not voluntary. We disagree.

It is clear that the "or" clause at the end of the instruction came about as a result of the judge's attempt to correct his reference to "she" in the earlier part of the instruction. There was no objection to this part of the charge. There is no likelihood that the jury did not understand that they were required to find that the statements were voluntarily, freely, and rationally made. "In determining the propriety of a jury instruction, '[w]e must consider the instruction in question in the context in which it was delivered, in order that we might determine its probable effect on the jury's understanding of their function.' " *Commonwealth* v. *Fryar, ante* 237, 246-247 (1997), quoting *Commonwealth* v. *Adrey*, 397 Mass. 751, 753-754 (1986). We conclude that the instruction more than adequately explained that the Commonwealth must prove that the confession was voluntary beyond a reasonable doubt. There was no error.

4. *Prior bad acts evidence.* The victim's mother testified that, just minutes before the homicide, the victim said, in the defen-

confession, Massachusetts follows the so-called "humane practice" rule. *Commonwealth* v. *Paszko*, 391 Mass. 164, 179 (1984). The confession may be admitted at trial only after a preliminary hearing in the absence of the jury and a determination of its voluntariness. If the judge determines that the statement was voluntary and admissible, the jury must be instructed to disregard the statement unless the Commonwealth has proved beyond a reasonable doubt that the statement was voluntary.

dant's presence, "Ma, I've had it. I can't keep living this kind of life he's putting me through. Did he tell you that he tried to choke me to death two days before we moved in with you and the baby was screaming because it hadn't been fed that night." The defendant objected to the statement as inadmissible prior bad acts evidence.[5] On appeal, the defendant argues that the admission of this statement was reversible error.[6] We disagree.

Evidence of prior bad acts may not be offered to prove bad character, but may be admissible for other relevant purposes. See *Commonwealth* v. *Fordham*, 417 Mass. 10, 22 (1994); *Commonwealth* v. *Leonardi*, 413 Mass. 757, 763 (1992); *Commonwealth* v. *Robertson*, 408 Mass. 747, 750 (1990). As always, if the probative value of the facts is substantially outweighed by the danger of prejudice, the evidence should be excluded. This determination is for the trial judge, and we will not disturb it unless it is palpably wrong. See *Commonwealth* v. *Scott*, 408 Mass. 811, 819 (1990); *Commonwealth* v. *Young*, 382 Mass. 448, 462-463 (1981).

We conclude that the judge did not err in admitting the victim's statement.[7] The victim's mother's testimony was relevant to the

---

[5]The defendant also claims that the judge erred in not conducting a voir dire prior to the admission of the statements. However, it appears that the defendant's motion for voir dire was withdrawn prior to the trial. Furthermore, the defendant did not point to, nor were we able to find, a suggestion that he preserved the voir dire issue at trial.

Nevertheless, we note that there is no independent requirement that a judge conduct a voir dire prior to the admission of a witness's testimony. "It [is] within the judge's discretion to hold a voir dire to ascertain whether inquiry in the presence of the jury would be prejudicial to the defendants or productive of relevant testimony." *Commonwealth* v. *Douglas*, 354 Mass. 212, 225 (1968), cert. denied, 394 U.S. 960 (1969). Although there were problems with the reliability of this statement which were revealed for the first time on the eve of trial, the defendant raised the recent fabrication issue on cross-examination. Furthermore, the jury did not convict the defendant on a premeditation theory. Thus, we conclude that there was no substantial likelihood of a miscarriage of justice in admitting the statements without a voir dire.

[6]The defendant suggests that the evidence was particularly troublesome because the malice charge included "purposeful, selfish, or wrongful motive" language which this court disfavored in *Commonwealth* v. *Eagles*, 419 Mass. 825, 836 (1995). We do not regard this suggestion as adequate appellate argument attacking the malice portion of the charge. In any case, in context, the disfavored language would not constitute reversible error. See *Commonwealth* v. *Johnson*, 422 Mass. 420, 428 (1996).

[7]The defendant did not object at trial or argue on appeal that the victim's mother's statement was inadmissible hearsay. See *Commonwealth* v. *Bart B.*,

defendant's relationship with the victim. In certain circumstances, evidence of a violent relationship is admissible to show intent. See *Commonwealth* v. *Nardone*, 406 Mass. 123, 128 (1989) (evidence that victim wife had stayed in shelter for battered women admissible to show hostile relationship and motive for killing); *Commonwealth* v. *Bryant*, 390 Mass. 729, 744 (1984) (evidence of prior attempts to kill victim properly admitted on issue of premeditation and malice). Furthermore, the victim's announcement in the defendant's presence of her intention to end the relationship is probative of the defendant's state of mind just prior to the killing. See *Commonwealth* v. *Sneed*, 413 Mass. 387, 396-397 (1992) (evidence of defendant's violent striking of victim shortly before date of death admissible to show defendant's state of mind or motive, and to negate accident as cause of victim's injuries). Thus, we conclude that the judge did not abuse his discretion in admitting the statements over the prior bad acts based objection.

5. *General Laws c. 278, § 33E, review.* The evidence against the defendant was overwhelming. We see no basis for reducing the charge to manslaughter or concluding that a reasonable likelihood of a miscarriage of justice exists.

*Judgment affirmed.*

---

424 Mass. 911, 917 & n.9 (1997) (defendant not permitted to raise issue on one theory at trial and another on appeal). Because this is an appeal from a conviction of murder in the first degree, however, we must also consider unpreserved issues to determine whether there was a substantial likelihood of a miscarriage of justice. See G. L. c. 278, § 33E.

Even if the statement were inadmissible, there was no substantial likelihood of a miscarriage of justice in light of the overwhelming evidence that the defendant committed the crime: the defendant was the only one present in the room with the victim; the victim's mother found the defendant straddling the victim with a knife; he fled to the Dominican Republic; and he confessed to stabbing the victim and testified to that effect in court. The hearsay statement was of little, if any, significance to the outcome of this case.