COMMONWEALTH *vs.* EDWIN F. SMITH.

Plymouth. October 9, 1997. - November 6, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, MARSHALL, & IRELAND, JJ.

*Constitutional Law,* Admissions and confessions, Waiver of constitutional
   rights, Self-incrimination. *Practice, Criminal,* Admissions and confessions,
   Voluntariness of confession, Capital case. *Evidence,* Admissions and
   confessions, Voluntariness of statement, Impeachment of credibility, Prior
   conviction. *Intoxication.*

There was no merit to a criminal defendant's claim that he should have been
   given written rather than verbal Miranda warnings upon his making an
   initial incriminating statement to police officers in noncustodial circum-
   stances. [81]
At a murder trial, the judge's findings supported her conclusion that, in the
   circumstances of the defendant's confession to police, his prior consump-
   tion of drugs and alcohol did not render the confession involuntary. [81-82]
At a murder trial, there was no substantial likelihood of a miscarriage of
   justice in the admission in evidence of the defendant's inculpatory state-
   ments to his brother and sister, in circumstances in which the judge cor-
   rectly submitted to the jury the issue of the voluntariness of those state-
   ments. [82-83]
At a murder trial, the judge did not abuse her discretion in ruling that, if the
   defendant testified, the prosecutor could impeach him with certain of his
   previous convictions. [83]
No reason appeared on the record of a murder trial to warrant this court's
   exercise of its power under G. L. c. 278, § 33E, to reduce the verdict. [83]

INDICTMENT found and returned in the Superior Court Depart-
ment on June 20, 1994.

The case was tried before *Margaret R. Hinkle,* J.

*Robert L. Jubinville, Jr.,* for the defendant.

*Mary E. Mullaney,* Assistant District Attorney, for the Com-
monwealth.

MARSHALL, J. A Plymouth County jury found the defendant
guilty of murder in the first degree on the theory of extreme
atrocity or cruelty. The victim was the defendant's girl friend.
On direct appeal the defendant argues that certain incriminating
statements he made to the police were not voluntary and were

admitted in evidence in violation of his Federal and State constitutional protections against self-incrimination. He also claims that incriminating statements he made to his brother and sister on the afternoon following the murder should not have been admitted; and that it was error for the trial judge to rule that the Commonwealth could impeach him with evidence of certain of his prior convictions if he testified on his own behalf. Finally, he argues there are mitigating factors that should lessen the degree of guilt. We conclude that there is no basis for granting the defendant relief pursuant to our authority under G. L. c. 278, § 33E. We affirm the conviction.

1. The jury were warranted in finding the following pertinent facts. On the afternoon of May 20, 1994, the defendant and the victim went to a bar. Afterward they bought a case of beer and went to a friend's house to drink and smoke marihuana. Later, the defendant and the victim went to another bar where the defendant drank alcohol and ingested cocaine. According to the defendant, at some point the defendant went outside and saw the victim engaging in oral sex with a man.[1] A fight ensued between the man and the defendant. The victim and the defendant then went to the defendant's apartment.

Later that night, the defendant went to two other bars on his own where he met two female acquaintances. Both women noticed scratches on his face. When asked about the victim's absence, the defendant told them that she had passed out in his apartment. Early the next morning, at approximately 3:30, the defendant joined a group of people in an apartment downstairs in his building for a brief period. When asked about the victim's whereabouts, the defendant again said that she was "home passed out."

That afternoon, May 21, at approximately 4:30, the defendant telephoned his sister. He told her that the night before he had been drinking and ingesting cocaine, that he had seen the victim having oral sex with another man, that he had fought with the man, and that he had fought with the victim when they returned to his apartment. He told his sister that he had choked the victim. He asked his sister to turn him in to the police, which she attempted to do: she went to the Bridgewater police and gave them the defendant's address.

---

[1]The defendant did not testify. The source of the defendant's statement was the defendant's sister, who testified as to what the defendant had told her about the evening of the victim's death.

Also that afternoon, the defendant went to the home of one of his brothers, and told him that he had had a fight with his girl friend, that he had not seen her since the night before, that he was afraid that something was wrong with her, and that the victim was at his apartment. The defendant's brother flagged down a Brockton police officer and he then directed the officer to the defendant's apartment, where he let him in. This occurred at approximately 6 P.M. on May 21. The officer discovered the victim's body in the bedroom. At trial, the evidence showed that the victim died as a result of manual strangulation. The victim had a black eye and bruises across the front of her neck and on the left and right sides of her neck. There was evidence that a fight had occurred in the bedroom.

At 6:10 P.M. on May 21, the defendant walked into the Brockton police station, alone. Police officers at that station had just learned about the murder from the Bridgewater police, and had also learned about the Brockton officer's discovery of the victim's body.

2. After his arrival at the Brockton police station, the defendant made incriminating statements to the police. He argues on appeal that those statements should have been excluded at trial because he did not receive a legally sufficient Miranda warning, and because his statements were not made voluntarily. Prior to trial, the defendant did not move to suppress the statements. However, at trial and prior to the testimony of two Brockton police officers, the judge appropriately conducted a voir dire at which the defendant and the two officers testified. We describe their testimony about the circumstances surrounding the statements,[2] and the evidentiary rulings relating to them.

When the defendant presented himself at the Brockton police station, he stated to the desk officer, "I believe you or the police are looking for me." The desk officer asked him in regards to what situation were the police looking for him. The defendant responded, "For the murder on Warren Ave." The desk officer, who acknowledged this statement was unusual, escorted the defendant to the office of his patrol supervisor, Sergeant Lon L. Elliott, and told him what the defendant had said. Sergeant Elliott, who at that time did not know the suspect's name, asked the defendant what he was doing at the station, and the

---

[2]The later testimony of the two police officers before the jury regarding the defendant's statements was substantially similar.

defendant responded that he was there to "confess" about the murder of "his girl friend down at 664 Warren Avenue." Another officer later joined Sergeant Elliott. Sergeant Elliott testified that he immediately gave the defendant Miranda warnings, from memory, and that the defendant told him that he understood his rights.

Sergeant Elliott said he then asked the defendant what had happened. The defendant confessed to the murder and said that he had had an argument with his girl friend, that he had strangled her, and he recounted his activities after the strangulation. When asked whether he was using drugs, the defendant responded that he had been using cocaine and alcohol, and was "all fucked up." The defendant was unrestrained throughout the interview, which lasted no more than ten minutes. The defendant was then formally arrested. He was advised of his Miranda rights a second time, and he refused to answer further questions.

The defendant testified on voir dire that he did not remember receiving Miranda warnings, that he in fact did not remember any of the statements he made to the police, and that he was confused and intimidated by the officer's questions. The defendant admitted that he drove the victim's car to the police station and that he wanted to go to the police station in order to speak to the police. The defendant remembered that the detailed personal information written on the booking sheet was accurate, and also remembered speaking to his sister and brother earlier that same day. Sergeant Elliott testified that he smelled alcohol on the defendant's breath and noticed that his eyes were red, but that the defendant's speech was not slurred, he was responsive to questions, and he was able to walk without staggering. The desk officer said the defendant appeared calm and relaxed and that he did not see any signs that the defendant was intoxicated.

At the conclusion of the voir dire, the judge ruled that the defendant was not in custody when he made the incriminating statements to the police. She also ruled that the Commonwealth had demonstrated beyond a reasonable doubt that the defendant made his statements freely and voluntarily.

"In reviewing a judge's determination regarding a knowing waiver of Miranda rights and voluntariness, 'we grant substantial deference to the judge's ultimate conclusions and we will not reject a judge's subsidiary findings if they are warranted by the

evidence.' " *Commonwealth* v. *Rodriguez*, 425 Mass. 361, 364 (1997), quoting *Commonwealth* v. *Mandile*, 397 Mass. 410, 412 (1986). Nevertheless, we "independently review[] the correctness of the judge's application of constitutional principles to the facts found." *Commonwealth* v. *Mello*, 420 Mass. 375, 381 n.8 (1995).

We consider first the judge's conclusion that the defendant was not in custody when he made the incriminating statements to the police. In *Commonwealth* v. *Jung*, 420 Mass. 675 (1995), we described four factors that bear on the question of whether a defendant is in custody or otherwise deprived of his freedom in any significant way: "(1) the place of the interrogation; (2) whether the investigation has begun to focus on the suspect, including whether there is probable cause to arrest the suspect; (3) the nature of the interrogation, including whether the interview was aggressive or, instead, informal and influenced in its contours by the suspect; and (4) whether at the time the incriminating statement was made, the suspect was free to end the interview by leaving . . . as evidenced by whether the interview terminated with the defendant's arrest." *Id.* at 688, quoting *Commonwealth* v. *Bryant*, 390 Mass. 729, 737 (1984). In this case, the defendant came to the police station on his own accord and announced to the police at the outset that he understood they were looking for him for the murder on Warren Avenue. Shortly after that, he told Sergeant Elliott that he was there to confess about the murder on Warren Avenue. We agree with the judge that the defendant was not in custody when he made these initial statements. When the defendant arrived at the Brockton police station the police had some information about the murder, but did not know that this particular person was a suspect.[3]

However, after the defendant told the police that he was there to confess to the murder of his girl friend, given the information the police already had received about the murder, we conclude that if he had wanted to leave at that point, he would not have

---

[3]The fact that the defendant went from the police station lobby to Sergeant Elliott's office also does not in itself establish that the defendant was in custody. The requirement of Miranda warnings is not "to be imposed simply because the questioning takes place in the station house." *Commonwealth* v. *Jung*, 420 Mass. 675, 689 (1995), quoting *Oregon* v. *Mathiason*, 429 U.S. 492, 495 (1977).

been free to do so.[4] Sergeant Elliott immediately recognized — correctly — that even though the defendant had presented himself voluntarily at the police station, he should be given the Miranda warnings.

Although it was error for the judge to conclude that the defendant was not in custody after he told Sergeant Elliott that he had come to the police station to confess to the murder, the error was harmless. Immediately after he made the initial incriminating statements that would have undercut his freedom to leave the police station, and before he made any further statements to the police, Sergeant Elliott gave the defendant a Miranda warning from memory. According to Sergeant Elliott, the defendant then told the officer that he understood his rights, and voluntarily waived them.[5]

The defendant now argues that he should have been given written Miranda warnings. That argument is without merit. *Commonwealth* v. *Corriveau*, 396 Mass. 319, 330 (1985). Similarly, we reject the defendant's argument that he should have received a "fifth" Miranda warning that he could stop the questioning at any time. See *Commonwealth* v. *Lewis*, 374 Mass. 203 (1978).

Due process, nevertheless, requires a separate inquiry into the voluntariness of the defendant's statements apart from the validity of the Miranda waiver. *Commonwealth* v. *Rodriguez, supra* at 368. The defendant argues that, because he was under the influence of drugs and alcohol, any statements that he made to the police could not have been made voluntarily. Again, we grant substantial deference to the trial judge's finding that the Commonwealth proved beyond a reasonable doubt that the defendant's statements were made voluntarily. *Id.* at 364. We look at the totality of the circumstances surrounding the making

---

[4]As in the *Jung* case, the short interview in this case was not conducted in an aggressive manner. The defendant went to the police station voluntarily and was free to and did end the questioning when he wanted. *Id.* at 688. The defendant was not handcuffed or restrained at any time during the interview, which lasted but ten minutes, and we find nothing in the record to support the defendant's statement that he was intimidated by the police.

[5]Because of her conclusion that a custodial interrogation had not occurred at any point, the judge did not make a formal ruling on whether the defendant had received the oral Miranda warning from Sergeant Elliott. See note 2, *supra*. Nevertheless, the testimony and the judge's statements during the voir dire are consistent with a finding that the defendant had been given the Miranda warnings at that time.

of the statement. *Commonwealth* v. *Magee*, 423 Mass. 381, 388 (1996). A defendant's intoxication is one factor that bears on the voluntariness of a statement, *Commonwealth* v. *Prater*, 420 Mass. 569 (1995), but the fact that a defendant has consumed drugs and alcohol before his arrest does not necessarily mandate a finding that the defendant's confession was involuntary. *Commonwealth* v. *Mello*, 420 Mass. 375, 385 (1995).

The judge's findings amply support her conclusion. Faced with the testimony of more than one police officer that the defendant was coherent; where the defendant had driven himself voluntarily to the police station and confessed to the crime in a manner that was entirely consistent with his earlier statements, first to his sister and then to his brother; where the statements to the police were consistent with what was learned at the scene; where there was no claim of any threats or unfair police tactics; where the defendant was advised of his rights and agreed in any event to talk to the police; and where the defendant could and did cease answering questions when he wanted to, we see no basis to disagree with the judge's conclusion. See *Commonwealth* v. *Judge*, 420 Mass. 433, 447 (1995), where we upheld a judge's finding that a confession was voluntary when the defendant "did not display any unsteadiness on his feet and his speech was not slurred [and he] appeared alert and responsive to all questions" and where, as here, the defendant had the ability to recall details of the crime. See *Commonwealth* v. *Mello, supra* at 385; *Commonwealth* v. *Duffy*, 36 Mass. App. Ct. 937, 939 (1994) (affirming ruling that statements by man of below normal intelligence who, after drinking, went to police station and confessed to killing, were voluntary).

3. We review the defendant's claim that his statements to his brother and to his sister regarding the murder were made involuntarily, and also should not have been admitted. An admission or a confession made to a civilian as much as to a police officer is admissible only if it is voluntarily made. *Commonwealth* v. *Benoit*, 410 Mass. 506, 511 (1991). But the question of voluntariness must be raised by a defendant, and he must offer some proof to support his claim. In *Commonwealth* v. *Tavares*, 385 Mass. 140, cert. denied, 457 U.S. 1137 (1982), we said that a "judge has 'no duty to ask the jury to pass on voluntariness unless it is made a live issue at trial.' " *Id.* at 150, quoting *Commonwealth* v. *Alicea*, 376 Mass. 506, 523 (1978). Here, the defendant failed to do so. He did not file a pretrial motion to suppress the statements to his brother or sister, he did not request a voir dire to determine the voluntariness of the

statements, and he did not object to their admission. Because he failed to preserve his rights, we consider only whether a substantial likelihood of a miscarriage of justice has occurred because of the admission of those statements. *Tavares, supra* at 149.

In this case, in accordance with our humane practice, the judge correctly instructed the jury to disregard the defendant's statements to his family members unless they concluded for themselves that the Commonwealth had proved beyond a reasonable doubt that the defendant's statements to his siblings were voluntary. In these circumstances there was no substantial likelihood of a miscarriage of justice. Cf. *Commonwealth* v. *Burke,* 414 Mass. 252, 258-259 (1993) (holding that there was no substantial likelihood of miscarriage of justice even though judge did not give jury humane practice instruction).

4. The judge ruled that, if the defendant testified, the prosecutor could impeach him with his convictions of robbery and assault with intent to rob and his conviction of larceny of a motor vehicle. The defendant argues that those rulings constitute prejudicial error. We disagree. Those convictions were not "substantially similar" to the murder charge, and the judge was correct to conclude that they would be admissible. *Commonwealth* v. *Whitman,* 416 Mass. 90, 94 (1993). We note that the judge also ruled that the defendant could not be impeached with an earlier conviction of assault and battery were he to testify. It is clear that the judge carefully weighed the competing considerations of unfair prejudice to the defendant and the Commonwealth's legitimate goal of impeachment in deciding which of the defendant's prior convictions could be used to impeach him. There was no abuse of discretion.

The defendant also argues that he would not have impeached the Commonwealth's witnesses with evidence of their prior convictions if he had realized that this would influence the judge's decision as to whether he could also be impeached by his prior convictions if he testified. His argument fails because he was well aware of this possibility: the prosecutor twice raised the issue when the defendant impeached the Commonwealth's witnesses. Surprise is not shown on this record. *Commonwealth* v. *Maguire,* 392 Mass. 466, 470 n.9 (1984).

5. Our review of the entire record provides us with no reason to exercise our authority under G. L. c. 278, § 33E, to reduce the verdict to murder in the second degree or manslaughter.

*Judgment affirmed.*