# COMMONWEALTH *VS.* DAVID ST. PETER.

No. 96-P-1629.

Barnstable. June 8, 1999. - February 2, 2000.

Present: KASS, PORADA, & GELINAS, JJ.

*Constitutional Law,* Admissions and confessions, Waiver of constitutional
   rights, Assistance of counsel. *Practice, Criminal,* Admissions and confes-
   sions, Waiver, Voluntariness of statement, Assistance of counsel, Instruc-
   tions to jury. *Waiver. Intoxication. Evidence,* Photograph, Inflammatory
   evidence, Judicial discretion.

A spontaneous incriminating statement made by a defendant in custody was
   not the product of interrogation, and a valid waiver of Miranda rights was
   not necessary to render the statement admissible in evidence. [520]
It was clearly apparent from the record of criminal proceedings that the
   defendant had knowingly, intelligently, and voluntarily waived his Miranda
   rights before making incriminating statements to police. [520]
The record of a criminal proceeding supported the judge's findings and conclu-
   sion that neither the defendant's consumption of drugs and alcohol before
   he made incriminating statements to police nor his limited intelligence
   rendered his Miranda waivers and subsequent statements involuntary.
   [521-522]
Where a criminal defendant twice waived his Miranda rights and voluntarily
   submitted to interrogation on uncharged crimes, police officers were not
   required to have forgone questioning because the defendant had requested
   and accepted appointed counsel at a near-contemporaneous arraignment on
   an unrelated offense. [522-523]
At the trial of a manslaughter case, the admission in evidence of fifteen
   autopsy photographs, concededly inflammatory and graphic, was error,
   where they had no probative value with respect to what had caused the
   blunt trauma that resulted in the victim's death: however, in light of the
   evidence against the defendant, including his confession, and the judge's
   instructions to the jury on their use of the photographs, the error was
   harmless. [523-524]
At the trial of indictments for assault and battery and manslaughter, there was
   no error in the judge's instruction to the jury on the proximate cause of
   death and no error in his declining to instruct the jury on the issue as
   requested by the defendant [524-525]; nor was there error in the judge's
   instructions on the two separate indictments [525]; and the judge did not
   abuse his discretion in declining to give a requested instruction regarding
   failure of the police to videotape the defendant's confession [525-526].

No substantial risk of a miscarriage of justice arose from a minor inadvertent error in the judge's "humane practice" instruction, in light of the correctness of the judge's first instruction on the issue and the charge as a whole. [525]

INDICTMENTS found and returned in the Superior Court Department on October 26, 1993.

A pretrial motion to suppress evidence was heard by *Gerald F. O'Neill, Jr.,* J., and the cases were tried before him.

*Daniel J. Johnedis* for the defendant.

*J. Thomas Kirkman,* Assistant District Attorney, for the Commonwealth.

GELINAS, J. The defendant was convicted by a jury in the Superior Court of manslaughter, G. L. c. 265, § 13, and assault and battery, G. L. c. 265, § 13A, following the death of his girlfriend. He appeals, claiming error in (1) the denial of his motion to suppress four statements made to the police while he was in custody; (2) the admission in evidence of certain photographs taken at and after an autopsy performed on the victim; and (3) certain of the judge's instructions to the jury. We affirm the convictions.

We summarize the evidence presented at trial, reserving certain details for our discussion of the claimed errors.

During the late evening hours of August 22, 1993, and the early morning hours of August 23, 1993, the defendant consumed a considerable amount of alcohol and painkilling medication, in preparation for, and in amelioration of, the pain attendant on self-extraction of his diseased tooth. He extracted the tooth in the early morning of August 23, suffering pain, bleeding, and swelling. The resulting effects of the alcohol, medication, and extraction caused him to miss his work assignment on the 6 A.M. sailing of the Captain Bob, his brother's charter fishing boat. By early afternoon, feeling somewhat better but not yet ready to work, the defendant persuaded his brother to permit him to join the afternoon sailing to relax and recuperate. He boarded the boat along with twenty paying passengers and the victim. He and the victim repaired to a small compartment below deck in the forward area of the boat. During the next few hours, as the boat moved from one fishing spot to another, several passengers and one of the crew heard the defendant and the victim arguing violently (the quarrel was

about the victim's having spent the prior night at a bar drinking). They also saw the defendant strike the victim more than once. The victim stayed on the deck momentarily and then returned to the forward compartment. More arguing and thuds were heard. These stopped after a time, and, following a period of quiet, the defendant came on deck, reporting to his brother that the victim had suffered a heart attack. He stated that, despite his efforts to revive her with water and CPR, she was dead. The boat returned to port, where members of the police and fire department were waiting. After removal of the body, the police talked with the passengers and crew, including the defendant. The defendant volunteered that the victim, upon returning to the compartment, had slipped on the companionway ladder, fallen into the compartment, and become unconscious. His efforts at revival proving futile, he had then reported the incident to his brother. The police did not question the defendant at this time. About an hour after the boat docked, the police determined that there was an outstanding three year old warrant for the defendant's arrest on a complaint for driving while under the influence (DUI). The police arrested the defendant on the warrant, and he was transported to the Barnstable police station, where he was booked. At the arrest and again at booking, he was advised of his rights, including the warnings prescribed in *Miranda* v. *Arizona*, 384 U.S. 436 (1966).

1. *The motion to suppress.* By a motion to suppress, and later by objection at trial, the defendant sought to keep from the jury four statements that he gave while in police custody. He complains that (a) the judge failed to consider whether the waiver of his rights afforded by *Miranda* v. *Arizona, supra,* was knowing and voluntary; (b) the statements themselves, as well as the waivers, were not voluntary due to his low level of intelligence, his emotional state, and his consumption of alcohol; and (c) the attorney appointed to represent him on the unrelated DUI charge, who was present in the building, was not notified prior to his being questioned by police at the Barnstable court house.

The judge's findings reflect his consideration of the defendant's age, education, intelligence and emotional stability, his experience in the criminal justice system, his physical and mental condition, his lack of sobriety, and the details of the interrogation, including the conduct of the police. These appropriate "relevant factors" apply with respect to the voluntari-

ness of the Miranda waivers and the statements. See *Commonwealth* v. *Mandile*, 397 Mass. 410, 413 (1986); *Commonwealth* v. *Edwards*, 420 Mass. 666, 673 (1995).

a. *The* Miranda *warnings.* The defendant contends that the judge failed to consider and rule on whether his waiver of Miranda rights was knowing, voluntary, and intelligent. As to the first statement, when the officer at booking was completing his reading of the Miranda warnings, the defendant, unsolicited, said, "That's a bad one. I might have just killed someone." Although the defendant was in custody, no one had asked him a question; his statement was entirely spontaneous. "Miranda warnings are only necessary where one is the subject of 'custody and official *interrogation*' " (emphasis supplied). *Commonwealth* v. *Larkin*, 429 Mass. 426, 432 (1999), quoting from *Illinois* v. *Perkins*, 496 U.S. 292, 297 (1990). Here, there was no interrogation, and thus the standards set by Miranda were not violated.

With regard to the remaining statements, the Commonwealth's burden is to show, beyond a reasonable doubt and in light of all the circumstances, a knowing, intelligent, and voluntary waiver. *Commonwealth* v. *Rodriguez*, 425 Mass. 361, 366 (1997). A judge's failure to make findings regarding waivers of Miranda rights is not fatal where the judge's conclusion is "clearly evident from the record." *Commonwealth* v. *Parham*, 390 Mass. 833, 837-838 (1984), quoting from *Commonwealth* v. *Brady*, 380 Mass. 44, 52 (1980). The judge's findings here explicitly address the voluntariness of the statements and include the facts that Miranda warnings had been given, that the defendant indicated that he understood those rights, and that he waived those rights. It is, therefore, "clearly evident from the record" that the judge determined that the waivers were valid. *Commonwealth* v. *Parham, supra.*

Moreover, although "[t]he voluntariness of . . . waiver[s] on the basis of Miranda and the voluntariness of . . . statements on due process grounds are separate and distinct issues," *Commonwealth* v. *Edwards, supra* at 673, in the circumstances of this case, where the Miranda warnings immediately preceded the statements and the judge made findings regarding the voluntariness of the statements, we view those findings as relevant to the waivers. See *Commonwealth* v. *Edwards, supra.* On review of the record and the judge's findings, as set forth below, we conclude that the waivers were made knowingly, intelligently, and voluntarily. See *Commonwealth* v. *Rodriguez, supra.*

b. *Voluntariness.* The defendant argues that, because he was under the influence of drugs and alcohol and was of limited intelligence, his waivers and any statements he made could not have been made voluntarily. We give "substantial deference to the judge's ultimate conclusions and we will not reject a judge's subsidiary findings if they are warranted by the evidence," *Commonwealth* v. *Rodriguez,* 425 Mass. at 364, quoting from *Commonwealth* v. *Mandile, supra* at 412; we accept his resolution of conflicting testimony, *Commonwealth* v. *Tavares,* 385 Mass. 140, 144, cert. denied, 457 U.S. 1137 (1982), and "we conduct an independent review to ascertain whether the judge properly applied the law." *Commonwealth* v. *Rodriquez, supra.* Here, there was testimony from police officers, some of whom had known the defendant over a long period of time,[1] concerning the defendant's condition. They described him at the relevant times as coherent, lucid, although somewhat nervous and in discomfort from the tooth extraction, walking and speaking normally, and understanding and answering questions in a rational manner. The first police questioning, after Miranda warnings, took place some four hours after the defendant's arrest and at least five hours after he had ingested alcohol, and the second, also after Miranda warnings and resulting in two statements, came the next day. The defendant was evaluated by a clinical psychologist who testified at the suppression hearing as to the defendant's IQ (84, at the low end of the normal range), his long-standing alcoholism, leading to a heightened tolerance of alcohol over time, and his experience with law enforcement which would have aided him in understanding Miranda warnings even though he had consumed a substantial amount of alcohol. There is no suggestion in the record, and no claim made by the defendant, of undue, aggressive interrogation or trickery on the part of the police.

"A defendant's intoxication is one factor that bears on . . . voluntariness . . . *Commonwealth* v. *Prater,* 420 Mass. 569 (1995), but the fact that a defendant has consumed drugs and alcohol before his arrest does not necessarily mandate a finding

---

[1] The record suggests that the police and the parties were well acquainted. The defendant had a five-page record of arrests, with many convictions, and was well known to the police. His brother Robert had served as a member of the Barnstable police force. One of the officers present at the boat, and who transported the defendant to the station after arrest, was the victim's brother-in-law. There is no indication in the record, and the defendant raises no issue, that any of this influenced the investigation or interrogation.

that the defendant's confession was involuntary. *Commonwealth v. Mello*, 420 Mass. 375, 385 (1995)." *Commonwealth v. Smith*, 426 Mass. 76, 82 (1997). See *Commonwealth v. Judge*, 420 Mass. 433, 447-448 (1995) (confession voluntary when the defendant "did not display any unsteadiness on his feet and his speech was not slurred"; "[t]he defendant appeared alert and responsive to all questions" and had the ability to recall details of the crime); *Commonwealth v. Duffy*, 36 Mass. App. Ct. 937, 938-939 (1994) (statements by man of below normal intelligence who, after drinking, went to a police station and confessed to a killing, were voluntary). This case is unlike *Commonwealth v. Hosey*, 368 Mass. 571 (1975), relied upon by the defendant, where the Supreme Judicial Court determined that the trial judge erred in finding that statements were voluntary where police testimony indicated that during interrogation the defendant was "extremely high," "extremely emotional," and "detached from reality." *Id.* at 577-579. We discern no error.

c. *Failure to notify the defendant's DUI attorney of the interrogation.* The defendant gave a statement at the Barnstable District Court on the day following his arraignment on the DUI charge, and gave another statement shortly thereafter at the scene of the incident. The defendant contends that the two police officers, well experienced, should have notified the defendant's attorney appointed on the DUI charge of their intent to question him about the death of his girlfriend and, absent the attorney's presence, forgone interrogation. We disagree. After the arraignment, a trooper and a Barnstable police officer asked the defendant if he would speak with them. Prior to any conversation, the police again advised the defendant of his Miranda rights; the defendant indicated that he understood them, wished to speak with the officers, and signed a waiver form. On the following day, after having spent the night in lockup, the defendant was again advised of his rights, and again the defendant said he understood and signed the form. There was no obligation on the part of the police to forgo interrogation. The defendant's request for, and acceptance of, appointed counsel at the arraignment and bail hearing on the charge of operating while under the influence did not give him Sixth Amendment protection on the unrelated, uncharged offenses. *McNeil v. Wisconsin*, 501 U.S. 171 (1991). This issue, as raised pursuant to art. 12 of the Massachusetts Declaration of Rights,

was resolved against the defendant in *Commonwealth* v. *Rainwater*, 425 Mass. 540, 553-556 (1997), cert. denied, 522 U.S. 1095 (1998), decided after the trial in this case.

2. *The autopsy photographs.* An array of fifteen photographs, arranged on a large poster board, taken during and after the autopsy and depicting the victim's open skull and brain, was introduced in evidence for the purpose of showing the cause of death, established by the medical examiner as blunt trauma to the head coupled with the effects of alcohol causing a subarachnoid hemorrhage. The defendant objected to the introduction of the photographs. He argues, and the Commonwealth concedes, that the photographs were inflammatory, graphic, and grisly. We review their admission to determine whether the judge abused his discretion and, if so, whether he committed prejudicial error. *Commonwealth* v. *Bastarache*, 382 Mass. 86, 106 (1980). *Commonwealth* v. *DeSouza*, 428 Mass. 667, 670 (1999).

Generally, for the purpose of admission, whether the inflammatory nature of a photograph outweighs its probative value is left to the sound discretion of the trial judge, and it is not error to admit photographs even though they are cumulative of other evidence or support facts stipulated. *Ibid.* Appellate courts have rarely challenged that discretion. *Commonwealth* v. *Bastarache, supra.* Photographs showing the body as altered in the course of an autopsy, if of a graphic nature, present a different situation. *Ibid.* They should be admitted only if they would assist the jury in making a finding of fact on a contested point; otherwise their introduction would serve no proper purpose. *Ibid. Commonwealth* v. *Carlino*, 429 Mass. 692, 696 (1999). Here, the defendant did not contest the cause of death (subarachnoid hemorrhage caused by blunt trauma accompanied by the victim's high blood alcohol content). Solely at issue was whether the blunt trauma occurred as a result of the defendant's striking the victim, by her striking her head as a result of his blows, or by her falling as she descended the stairs. The photographs had no probative value on this contested issue, and it was an abuse of discretion to admit them in evidence over the defendant's objection. We determine, however, that the error was harmless, given the strength of the evidence against the defendant bearing on his striking of the victim and the victim's striking her head as a result of the blows in a manner consistent

with the injury that caused her death,[2] and given the judge's instructions and his order with regard to the presentation of the photographs.[3]

3. *Jury instructions.* The defendant claims error in four portions of the jury instructions. We consider each in turn, in the context of the charge taken as a whole, to determine whether the jury were properly instructed, *Commonwealth* v. *Batchelder*, 407 Mass. 752, 759 (1990); *Commonwealth* v. *Raymond*, 424 Mass. 382, 386 (1997), and "what a 'reasonable juror could have interpreted the instruction' to mean." *Commonwealth* v. *Raymond, supra*, quoting from *Commonwealth* v. *Nieves*, 394 Mass. 355, 360 (1985). *Commonwealth* v. *Richardson*, 429 Mass. 182, 185 (1999).

The defendant did not object to certain portions of the charge complained of, and we, therefore, consider whether those portions created a substantial risk of miscarriage of justice. *Commonwealth* v. *Gunter*, 427 Mass. 259, 270 (1998). *Commonwealth* v. *Tavares, supra* at 148. Where there was objection, we determine whether there was prejudicial error.

a. *Instruction on proximate cause.* The defendant requested that the judge charge the jury that they must find that the defendant's conduct be *the* proximate cause of death and not merely *one* of the causes of death. The judge refused to charge in this manner. Rather, he charged that the jury must find that the defendant's acts were *a* proximate cause of the victim's death. The judge further defined proximate cause as "any cause which in a natural and continuous sequence unbroken by any efficient intervening cause produces the result complained of and without which the result would not have occurred. It may be assisted or accelerated by other incidental and ancillary matters; but if it continues as an operative and potent factor, the chain of causation is not broken." "[C]onduct is a proximate

---

[2] The defendant admitted to striking the victim "knock[ing] her around pretty good," and at the scene pointed to two locations in the compartment (a cabinet near the sink and an area near the porthole) where the victim had struck her head.

[3] The judge instructed the jury that they were to consider the photographs only as assisting them in determining the cause of death. As to their presentation, the judge ordered that each picture in the collage be covered, to be uncovered only as the medical examiner was testifying to matters regarding the particular photograph. The judge further admonished the jury that the photographs were not representative of the victim at the time of death. The array was given to the jury during their deliberation.

cause of death if, 'in the natural and continuous sequence,' it produces the death, and the death would not have occurred in its absence." *Commonwealth* v. *Osachuk*, 43 Mass. App. Ct. 71, 73 (1997), quoting from *Commonwealth* v. *Rhoades*, 379 Mass. 810, 825 (1980). Accordingly, there was no error in the refusal to give the requested instruction or in the instruction as given. See *ibid.* See also *Commonwealth* v. *Giacomozza*, 311 Mass. 456, 463 (1942).

b. *The instruction under the "humane practice" rule.* The defendant acknowledges that initially the judge properly instructed the jury under the "humane practice" rule. He complains that in reiterating a portion of that instruction the judge inserted a double negative, effectively reversing the standard of proof with respect to this issue. There was no objection at trial, and in reviewing this minor, inadvertent error in the context of the entire charge and the correctness of the judge's first instruction, we discern no substantial risk of a miscarriage of justice. See *Commonwealth* v. *Drewnowski*, 44 Mass. App. Ct. 687, 689-691 (1998).

c. *Separate instructions on the two indictments.* The defendant claims it was error for the judge to charge the jury, "If you find that earlier in the trip the defendant committed an assault and battery upon [the victim] . . . then you would be warranted in finding him guilty of assault and battery on indictment 45777." The judge's instruction here was not error because there was evidence before the jury of two separate incidents. The judge also instructed the jury that they could not convict the defendant from a single set of facts on two different indictments. The judge's charge properly reflected the state of the case and, in light of the evidence, properly stated the evidence and the possible inferences to be drawn therefrom. See *Commonwealth* v. *Perez*, 390 Mass. 308, 319 (1983).

d. *Refusal to charge regarding the police failure to videotape the defendant's statements.* The judge refused to instruct the jury that failure of the police to videotape the defendant's confession could be considered in determining the voluntariness of the defendant's statements. The defendant invites us to read the case of *Commonwealth* v. *Diaz*, 422 Mass. 269, 271-273 (1996), as requiring the requested instruction. Certain states, notably Alaska (as a matter of State constitutional law) and Minnesota (under its general superintendence power) require that custodial interrogation performed at a police station be

electronically recorded. *Id.* at 272. The Supreme Judicial Court has declined to adopt such a rule. *Id.* at 273. *Commonwealth* v. *Fryar*, 414 Mass. 732, 742 n.8 (1993), *S.C.*, 425 Mass. 237, cert. denied, 522 U.S. 1033 (1997). Counsel is, however, permitted to "argue to a jury and to a judge as fact finder that the failure of the police to record electronically statements made in a place of custody should be considered in deciding the voluntariness of any statement, whether the defendant was properly advised of his rights, and whether any statement attributed to the defendant was made." *Commonwealth* v. *Diaz, supra.* While an instruction along these lines would not be error, a judge need not instruct on "every subsidiary fact and possible inference." *Commonwealth* v. *Therrien*, 371 Mass. 203, 206 (1976), quoting from *Commonwealth* v. *Greenberg*, 339 Mass. 557, 584 (1959). *Commonwealth* v. *Chasson*, 383 Mass. 183, 188 (1981). "As long as a judge gives adequate and clear instructions on the applicable law . . . [the] extent of the charge [is a matter] within his discretion." *Commonwealth* v. *Roberts*, 378 Mass. 116, 130 (1979). *Commonwealth* v. *Key*, 381 Mass. 19, 27 (1980). *Commonwealth* v. *Phong Thu Ly*, 19 Mass. App. Ct. 901, 902 (1984). The judge did not abuse his discretion in declining to give an explicit instruction on the jury's ability to consider the failure to record electronically the defendant's statement.

*Judgments affirmed.*